The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 15, 2023, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: June 15, 2023



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CARYN E. WERMAN, | ) | Case No. 22-11618 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| SIMPLY FUNDING, LLC, | ) | Adversary Proceeding |
| | ) | No. 22-1070 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARYN E. WERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This case is currently before the Court on creditor, Simply Funding, LLC's motion for summary judgment against the debtor, Caryn Werman. The creditor

---
[1] This Opinion is not intended for official publication.

seeks a determination that the debt the debtor guaranteed for receivables the creditor purchased from A & A Heating and Cooling, LLC, (A & A) is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). The Court holds that questions of material fact exist as to one for more elements needed to establish nondischargeability under § 523(a)(2)(A) and (a)(6). Therefore, the Court denies the creditor's motion for summary judgment.

JURISDICTION

This Court has jurisdiction over this action. Determinations of dischargeability under 11 U.S.C. § 523 are core proceedings under 28 U.S.C. § 157(b)(2)(I) and Local General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. In addition, both parties have expressly consented to entry of final orders or judgment by the bankruptcy court (Docket No. 1 for creditor; Minutes of Dec. 6, 2022, pretrial for debtor). *See* 28 U.S.C. § 157(c) and (e); *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015) ("Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent."); *see also Hart v. S. Heritage Bank (In re Hart)*, 564 F. App'x 773, 776 (6th Cir. 2014) (bankruptcy court has constitutional authority to enter a final monetary judgment in nondischargeability action under § 523(a)(2)(B)).

2

BACKGROUND

Unless otherwise noted, the following facts are undisputed or construed in a light most favorable to the debtor. A & A is an Ohio residential and commercial heating, ventilation, and air conditioning (HVAC) business. It was founded by the debtor in 2019 after she passed the Ohio HVAC licensing exam. The debtor claims that she never held an official title, received a paycheck, or became involved in daily operations, but she is the sole owner, and for purposes of the current dispute, the only individual authorized to complete banking transactions or enter contracts on behalf of A & A.

Despite taking on other occasional projects, A & A primarily relied on contract work assigned by large, warranty companies. Around March or April 2022, in what the debtor describes as a "really, really dark time" (Werman deposition; pg. 18; line 24), the warranty companies stopped assigning new jobs, delayed payment for work A & A had already performed, or failed to pay altogether.

With the business "floundering," and "literally starting to starve," (*Id*. at line 14 ; and pg. 35 line 24), the debtor sought working capital to pay liabilities and get on "somewhat even ground." (*Id*. pg. 18; line 3). She responded to an online ad and was later inundated with offers for financial products, which she described as

3

"very overwhelming." Dynamic Capital, a third-party broker, was one of the companies that contacted the debtor on behalf of A & A. The debtor and her daughter completed Dynamic Capital's application and attached A & A's bank statements. On April 4, 2022, Dynamic Capital forwarded this information to the creditor.

The creditor is a New York company that purchases a percentage of a business's receivables or revenue stream in exchange for an "up-front lump sum payment." (Morales Declaration pg. 3). Sometime between April 4 and 7, 2022, a representative for the creditor interviewed the debtor by telephone. The oral representations made during this interview are disputed.

The creditor claims that during the interview, the debtor described A & A's business as "'fairly good,'" represented that it was seeking "working capital to purchase trucks, equipment and major tools," and never mentioned financial hardship. (*Id*. at pg. 4).

The creditor also contends that the debtor expressly acknowledged and demonstrated her understanding: 1) that under the Revenue Purchase Agreement, the creditor would purchase a $71,500 secured interest in A & A's receivables for an up-front, lump sum payment of $47,000 ($50,000 less $3,000 of costs and fees); 2) that as the sole owner of A & A, the debtor would personally guarantee the

agreement; 3) that the debtor was prohibited from securing additional funding while the agreement remained in effect; 4) that beginning April 15, 2022, the creditor would automatically debit approximately $2,300 per week from A & A's bank account; and 5) weekly debits would continue until the $71,500 was paid in full.

On April 7, 2022, based on A & A's application, bank statements, and the telephone interview, the parties enter into the Revenue Purchase Agreement. On April 8, 2022, the creditor wired $47,000 to A & A's bank account. The same day, A & A also obtained funding from Lendr.Online, which deposited $58,500 into the same bank account.

The debtor maintains that she did not understand that debits were to commence April 15, 2022, and continue *weekly* thereafter. She alleges that, despite the recent deposits into A & A's bank account, A & A could not afford to make both payroll and the first debit to the creditor. She further claims that she contacted the creditor to make alternative payment arrangements, but that the creditor refused to deviate from the original payment plan and began making threatening calls to her and her family. The creditor denies these allegations and attributes any harassment the debtor experienced to Dynamic Capital, the third-party broker. The debtor instructed A & A's bank to block the creditor's debits.

On April 19, 2022, a representative for the creditor reached the debtor by telephone to inquire about the block. The debtor explained "that while she was in the hospital…the account was compromised so the bank stopped the debit. She further told [the representative] that as soon as the problem was resolved she would ensure the block…was removed and that regular remittances would resume." (Baez Declaration, pg. 2, paragraph 4). At no point during this conversation did the debtor mention financial hardship or request changes to the payment plan.

After several additional attempts to contact the debtor, on April 27, 2022, the creditor filed an action against A & A and the debtor in New York for Breach of the Revenue Purchase Agreement and the Performance Guaranty. A & A did not defend the action, and the debtor filed for Chapter 7 bankruptcy before any judgment could be entered against her. A & A continues to operate and generate revenue but has never made a payment to the creditor.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

The moving party bears the burden of showing that "there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). The Court shall view all evidence in a light most favorable to the nonmoving party when determining the existence or nonexistence of a material fact. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Moreover, " '[s]ummary judgment is particularly inappropriate' when an individual's intent is at issue." *Buckeye Ret. Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008) (quoting *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002)). When the debtor's state of mind is an element, a court should only grant summary judgment "when the evidence is so one-sided that no

7

reasonable person could decide the contrary." *W. Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 484 (6th Cir. 2013) (internal quotations and citation omitted).

DISCUSSION

The creditor asks the Court to determine that a debt the debtor guaranteed for receivables the creditor purchased from A & A pursuant to the Revenue Purchase Agreement is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). The creditor does not assert any claim for nondischargeability under § 523(a)(2)(B). Nor does the amended complaint include a claim for a money judgment against the debtor.

In seeking an exception to discharge, a creditor bears the burden of proof by a preponderance of the evidence. *See In re Rembert*, 141 F.3d 277, 281 (6th Cir. 1988) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). Discharge exceptions are to be strictly construed in favor of the debtor. *Id.* (citing *Mfrs. Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083). The Court will separately address dischargeability under § 523(a)(2)(A) (Count I) and § 523(a)(6) (Count II).

DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

Section 523 of the Bankruptcy Code provides in relevant part:

> (a)    A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –

8

> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See In re Rembert*, 141 F.3d at 280-81 (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993).

The creditor must first prove that the debtor obtained "money, property, [or] services" through false pretenses, a false representation, or actual fraud. The creditor must also prove that, at the time, the debtor knew the representation was false or made with gross recklessness as to its truth. A false representation has been defined as "an expressed misrepresentation." *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr. S.D. Ohio 1999) (citing *Hile v. Lewis (In re Lewis)*, 164 B.R. 588, 591 (Bankr. N.D. Ohio 1994)). Mere silence regarding a material fact may constitute a false representation. *Id.* (citing *In re*

9

*Meadows*, 213 B.R. 699, 702 (Bankr. S.D. Ohio 1997)). False pretenses can involve "an implied representation or conduct that is intended to create and foster a false impression." *Id.* "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud like fraudulent conveyance schemes that can be effected without a false representation." *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2018).

As the Sixth Circuit noted in *In re Rembert*, a debtor's misrepresentation about the debtor's *ability* to pay is not actionable under § 523(a)(2)(A). Rather, it is the debtor's misrepresentation about the debtor's *intent* to pay that gives rise to a claim of nondischargeability. *See* 141 F.3d at 281. Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard. *Id.* To prove intent, the creditor must show "actual or positive fraud, not merely fraud implied by law," meaning that the money must have been obtained "maliciously and in bad faith." *Id.* (quoting *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1285-86 (9th Cir. 1996)). Thus, "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Id.* A debtor's subjective intent must be ascertained by the totality of the circumstances. *Id.* at 282. *See also Bartenwerfer v. Buckley*,

10

143 S. Ct. 665 (2023) (§ 523(a)(2)(A) makes nondischargeable a debt obtained by fraud regardless of the debtor's own culpability).

The creditor must then prove that it justifiably relied on the false representation. Justifiable reliance is a less demanding standard than reasonable reliance. *See Field v. Mans*, 516 U.S. 59, 71 (1995) (explaining the difference between justifiable reliance and reasonable reliance under the common law, citing extensively the Restatement (Second) of Torts). A creditor may be justified in relying on a representation even if "he might have ascertained the falsity of the representation had he made an investigation." *Id.* at 70. The creditor, however, cannot turn a blind eye where a "patent" falsity could be determined by a "cursory examination or investigation." *Id.* at 71.

Finally, the creditor must prove that the creditor's reliance was the proximate cause of the loss. For purposes of § 523(a)(2)(A), proximate cause may be established by showing the conduct was a substantial factor in the loss, or that the loss may be reasonably expected to follow. *Liberty Savings Bank, FSB v. McClintic (In re McClintic)*, 383 B.R. 689, 694 (Bankr. S.D. Ohio 2008).

The creditor asserts in its motion for summary judgment that the debtor obtained the working capital from the creditor through false pretenses, a false representation, or actual fraud. Specifically, the creditor points to the debtor's

11

express representations that A & A's business was "fairly good" and that A & A intended to use the working capital to purchase "trucks, equipment and major tools." The creditor also argues that the debtor's silence regarding the financial hardship it was experiencing constitutes a material misrepresentation. The debtor's oral statement that business was "fairly good" and her failure to disclose A & A's financial struggles both directly reflect the financial condition of the debtor or an insider and therefore fail to support a nondischargeability claim under § 523(a)(2)(A) and the Supreme Court's decision under *Lamar*.

On the other hand, the debtor's representation that A & A intended to use the working capital to purchase "trucks, equipment and major tools" does not reflect the debtor's financial condition. The creditor asserts in its amended complaint and its motion for summary judgment that the debtor misrepresented how the capital would be used and that the creditor relied on the debtor's misrepresentation when it decided to enter the Revenue Purchase Agreement. However, the debtor explains that in addition to paying other liabilities, like payroll and the fuel bill, A & A also "…paid supply houses…[and] paid for a truck." (Werman deposition, pg. 18, lines 8-9). Although not identified as "tools" explicitly, it is reasonable to infer that some of the supplies the debtor purchased also qualify as tools. Further, the debtor did in fact purchase a truck. When the evidence is construed in the light most

favorable to the debtor the Court cannot say that the creditor has established that the debtor made a material misrepresentation that the debtor knew was false or made with gross recklessness as to its truth. Therefore, the creditor is not entitled to summary judgment on its claim for nondischargeability under § 523(a)(2)(A).

## DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)

Section 523 provides in relevant part:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

11 U.S.C. § 523(a)(6). The scope of cognizable injuries under § 523(a)(6) is "broad, and refers to an economic injury . . . just the same as a physical assault on an individual[.]" *In re Leist*, 398 B.R. 595, 605 (Bankr. S.D. Ohio 2008). A finding of willfulness requires "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S 57, 61 (1998) (emphasis in original). Merely negligent or reckless conduct is insufficient to except a resulting debt from discharge. *Kawaauhau*, 523 U.S. at 62.

The creditor argues that the debtor willfully and maliciously injured the creditor when she intentionally blocked the creditor from debiting A & A's bank

13

account under the Revenue Purchase Agreement. The creditor claims that the debtor's intent to harm the creditor is evidenced by the affirmative steps she took to block A & A's account only one week after the creditor wired the $47,000 and by the failure to make any payments to the creditor even though A & A continued to operate and generate revenue. Although persuasive, genuine issues of material fact exist as to the debtor's intent. The debtor explained in her deposition that despite the delays in payment, she was hopeful that A & A would receive the money it was owed by the warranty companies. She stated, "I would have paid everything back if the monies would've kept coming in." (Werman deposition, pg. 42., lines 11-12).

Although the creditor presents a strong case of circumstantial evidence in support of its claim for nondischargeability under § 523(a)(6), when the evidence is construed in a light most favorable to the debtor, the Court cannot say that the creditor is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court denies the creditor's motion for summary judgment on its claims for nondischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

IT IS SO ORDERED.